AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington

| | |
|---|---|
| FILED _____ LODGED | |
| _____ RECEIVED | |
| **Oct 28, 2020** | |
| CLERK U.S. DISTRICT COURT | |
| WESTERN DISTRICT OF WASHINGTON AT TACOMA | |
| BY _____ DEPUTY | |

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
The Target Locations and Target Vehicle more fully described in Attachments A1 through A3

)
)
)
)
)
)

Case No.   MJ20-5247

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
The Target Locations and Target Vehicle more fully described in Attachments A1-A3, attached hereto and incorporated herein.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Unlawful possession with intent to manufacture, distribute, or dispense the controlled substance; |
| 18 U.S.C. § 1956 | Laundering of monetary instruments, and conspiracy to commit those offenses |

The application is based on these facts:

✓   See Affidavit of Guy Gino, continued on the attached sheet.

☐   Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Guy Gino, HSI Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   _____ 10/28/2020 _____

_____
*Judge's signature*

City and state:  Tacoma, Washington

J. Richard Creatura, United States Magistrate Judge
*Printed name and title*

USAO: 2020R00405

**AFFIDAVIT**

STATE OF WASHINGTON      )
                                    )    ss

COUNTY OF PIERCE          )

        I, Guy Gino, being first duly sworn on oath, depose and say:

## I.       INTRODUCTION AND AGENT BACKGROUND

       1.      I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since 2003.  I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am authorized by law to conduct investigations and to make arrests for felony offenses. I am currently assigned to the Assistant Special Agent in Charge, Portland, Oregon.  Prior to this, I was employed as a U.S. Border Patrol Agent and have been a federal law enforcement officer since September 1996.  I am authorized and assigned to investigate violations of federal laws, including 21 U.S.C. §§ 841(a)(1), 846, 848, and 843(b) of the Drug Abuse Prevention and Control Act of 1970; that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970.  During my tenure as a federal law enforcement officer, I have investigated and/or participated in investigations of conspiracy, money laundering, drug trafficking, fraud, smuggling and theft.  I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered including through the use of computers, smart phones, digital media and the Internet from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and from my participation in other investigations.  I am currently detailed to the High Intensity Drug Trafficking Area (HIDTA) Interdiction Taskforce (HIT) located at the Portland Police Bureau's (PPB) Narcotics and Organized Crime (NOC) Unit.

Affidavit of SA Guy Gino - 1
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

2.      This affidavit is based upon a joint investigation, conducted by the HIDTA Interdiction Task Force (HIT), Oregon State Police (OSP), Portland Police Bureau (PPB), Homeland Security Investigations (HSI), and Internal Revenue Service Criminal Investigations (IRS-CID).

## II.     PURPOSE OF AFFIDAVIT

3.      This affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the following two locations and one vehicle:

a. **SUBJECT PREMISES 1**:  9610 NE 106th Way, Vancouver, Washington 98662;

b. **SUBJECT PREMISES 2:**  1801 NW 78th Road, Vancouver, Washington 98665; and

c. **SUBJECT VEHICLE:**  a 2015 white Toyota Tundra pickup bearing OR license plate 587LHX, with VIN 5TFAW5F14FX477577.

4.      As set forth below, I have probable cause to believe that Jeremiah David CRUZ, Kyle Lee CERKONEY, Robert Benjamin Kawika DAWE, and other persons unknown at this time have committed and are continuing to commit violations of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 1956, to wit: the unlawful possession with intent to manufacture, distribute, or dispense controlled substances and laundering of monetary instruments, as well as the conspiracy to commit those offenses.  I also have probable cause that the above mentioned locations and vehicle will provide evidence, contraband, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 1956.

5.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records

related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## III.   STATEMENT OF PROBABLE CAUSE

6.     This search warrant affidavit is based on a joint investigation conducted by Clackamas County Sheriff's Office, Portland Police Bureau, Department of Homeland Security, U.S. Postal Inspection Service, and IRS Criminal Investigation (hereinafter referred to collectively as "investigators") who are investigating a drug trafficking organization (DTO) involving Kyle CERKONEY, Jeremiah CRUZ, Robert DAWE and others who work to broker marijuana shipments to various states across the country including New York, Ohio, Oklahoma, Georgia, Texas, Arkansas, Illinois, and Minnesota.  The DTO packages marijuana in freight and uses a freight service and/or transport truck to transport crates containing marijuana from the Portland/Vancouver metro area.   A member of the DTO will travel to the destination states after the crates have been shipped from the Portland/Vancouver metro area.  The DTO member meets the transport truck and/or freight service and takes delivery of the marijuana, which is ultimately sold to their customers in that state in exchange for drug proceeds.  The DTO members will then fly back on commercial airlines with drug proceeds, mail drug proceeds back to Portland, Oregon and/or structure cash deposits through bank accounts or some combination of the three.

7.     The DTO launders drug proceeds through Wells Fargo Bank accounts held in the name of Transport 1 Logistics, LLC, and PDX Payments Solutions, LLC, as well as depositing drug proceeds into their personal bank accounts.  The DTO will deposit drug proceeds in round, whole numbers often from various states around the United States where they have shipped the marijuana.  The DTO will often structure drug

Affidavit of SA Guy Gino - 3
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

proceeds from destination cities by executing multiple ATM transactions.[1]  The DTO will also structure cash deposits in increments under $10,000, thereby concealing the source and ultimate destination of the funds and avoiding the financial institutions having to file Currency Transaction Reports (CTR's) triggered by transactions of $10,000 or more. The investigation has shown that the DTO has created Oregon corporations called Transport 1 Logistics, LLC, and PDX Payments Solutions, LLC, but I believe these companies are fronts designed to disguise the nature and source of the DTO's drug trafficking.  Recently, due to seizures of drugs and drug proceeds, the DTO has switched to securing cashier's checks from their customers and/or having their customers wire transfer funds directly to Transport 1 Logistics, LLC.

8.     The DTO members and their roles in this investigation include the following:

a.     Jeremy CRUZ currently resides at 9610 NE 106th Way, Vancouver, Washington (**SUBJECT PREMISES 1**).  During the course of this investigation, CRUZ lived with his girlfriend, Emily Peralta, in Vancouver, Washington, until their recent separation in spring 2020. He then moved in with Robert DAWE at 5924 SW 229th Ave, Beaverton, Oregon, from July 2020 until mid-October 2020, when he moved to **SUBJECT PREMISES 1**.  On April 20, 2017, Jeremy CRUZ formed PDX Payment Solutions, LLC, and is listed as the Registered Agent and Member.  CRUZ listed the business activity for PDX Payment Solutions, LLC as offering point-of-sale equipment, credit card terminals, and merchant services processing.  CRUZ assists the DTO in packaging marijuana for out-of-state distribution and travels to various states to presumably take delivery of the marijuana and distribute the marijuana to their customers.  CRUZ will launder drug proceeds through PDX Payments Solutions, LLC.

---

[1] ATM machines will only accept a certain number of bills per transaction.  Therefore, CRUZ and CERKONEY will go through the drive and conduct multiple separate ATM transactions designed to stay below the $10,000 reporting threshold.

Affidavit of SA Guy Gino - 4
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

b.     Kyle CERKONEY currently resides at 678 Foresta Terrace, Portland, Oregon.  At the beginning of the investigation until about May 2020, CERKONEY had resided at 4740 SW 2nd Ave., Portland, Oregon.  CERKONEY formed Transport 1 Logistics, LLC, on January 9, 2017.  As of March 12, 2020, Transport 1 Logistics, LLC,, was administratively dissolved.  CERKONEY assists the DTO in gathering and packaging marijuana for out-of-state distribution and travels to various states to presumably meet the delivery of the marijuana and distribute the marijuana to their customers.  CERKONEY also launders drug proceeds through Transport 1 Logistics, LLC.

c.     Robert DAWE currently lives at 5924 SW 229th Avenue, Beaverton, Oregon.  On September 3, 2019, DAWE formed Shy Girl Organics, LLC, with a listed business address at 10770 SE 362nd Avenue, Ste. 120, Boring, Oregon.  DAWE assists the DTO in obtaining and packaging marijuana for out of state distribution.

**A.  August 12, 2019 Seizure of 142 Pounds of Marijuana Concealed in Crate with a Listed Sender of PDX Payment Solutions, LLC**

9.     On August 12, 2019, Portland Police Bureau (PPB) Canine Officer Scott Groshong, was conducting interdiction duties at the YRC freight terminal located at 6845 N Cutter Circle in Portland, Oregon.  With the consent of YRC management, Officer Groshong deployed his drug detection canine (K9) "Rex" to perform an open-air sniff on pallets of crates in the control of YRC Freight.  Officer Groshong informed me that while doing this, his K9 partner alerted to drug odor emanating from a pallet containing several cardboard boxes.

10.     The bill of lading (BOL) listed the contents as LED light fixtures and listed the shipper as "JEREMY CRUZ."  The tracking number for the shipment was 858-929485-5.  The shipment had been dropped off at the YRC terminal dock at 6845 N Cutter Circle, Portland, Oregon, and was set to be picked up at the YRC terminal dock located at 1313 Grant St., Brooklyn, New York.  The destination information listed the shipment as "ATTN: Jeremy CRUZ" and listed (541) 515-8796 as a contact number.

Affidavit of SA Guy Gino - 5
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   The freight was due to arrive at the YRC terminal dock in Brooklyn, New York, on

2   August 19, 2019.

3          11.     Officer Groshong called (541) 515-8796 and spoke to an individual who

4   identified himself as "Jeremy CRUZ" and inquired as to the contents of the crates. CRUZ

5   told Officer Groshong that his full name was "Jeremiah David CRUZ" with a date of

6   birth in September 1981.  When asked why Officer Groshong's drug K9 alerted to his

7   shipment, CRUZ admitted that the crates contained marijuana bud packaged for delivery

8   to Brooklyn, New York.  CRUZ said he was to fly to Brooklyn, New York and pick up

9   the freight at the destination's freight terminal dock.  CRUZ refused to discuss the plan

10  for the marijuana after he picked it up.  CRUZ told Officer Groshong that he knew it was

11  illegal to ship the marijuana out of state, and told Officer Groshong that he was doing it

12  to aid in getting out of significant debt.  CRUZ told Officer Groshong that he had spent

13  the last three months getting the total load of marijuana together and had all his current

14  savings tied up in the load.  CRUZ went on to explain that he and his wife are expecting

15  their first child, and he had made a bad choice in shipping the marijuana.

16         12.     Officer Groshong detained the freight then applied for and was issued a

17  Multnomah County Circuit Court search warrant to search the crate signed by

18  Multnomah County Judge Russell.  During the execution of the search warrant, Officer

19  Groshong discovered 142 pounds of dried and packaged marijuana, which was contained

20  inside five cardboard boxes that were secreted inside the crate.  The cardboard boxes bore

21  the name "PDX Payment Solutions."  A query of that address using Oregon DMV

22  databases revealed it is listed as the address on the Oregon driver license for Jeremiah

23  David CRUZ who has a date of birth in September 1981.

24  **B. August 19, 2019 Seizure of 209 Pounds of Marijuana from Tulsa, Oklahoma with**

25  **    a Listed Sender of PDX Payments Solutions, LLC**

26         13.     On August 19, 2019, investigators assigned to the DEA Tulsa Resident

27  Office intercepted similar freight at the YRC terminal dock located at 14599E Admiral

28  Place, Tulsa, Oklahoma.  Police reports stated that after a drug K9 alert and subsequent

Affidavit of SA Guy Gino - 6
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

search warrant signed in the State of Oklahoma, County of Tulsa, investigators located another 209 pounds of dried and packaged marijuana. The boxes containing the marijuana in Tulsa bore the logo and name of "PDX Payment Solutions," which was the same as the previously mentioned seizure made by Officer Groshong.  PDX Payment Solutions was also assigned Business ID #79225670925 in the YRC shipping system as indicated on the BOL.

14.     After reviewing the BOL from the Tulsa, Oklahoma shipment, investigators observed that the freight was assigned YRC tracking number 736-736633-4, and the BOL listed the freight as "electronic equipment."  The shipping address listed on the BOL was the YRC terminal dock at 6845 N Cutter Circle, Portland, Oregon.

15.     The BOL listed the shipper as "Jeremy" and the shipment originated from the Portland, Oregon YRC terminal on August 13, 2019.  The destination address was the YRC terminal dock located at 14599 E Admiral Place, Tulsa, Oklahoma.  The destination information listed "Jeremy" as the recipient and (541) 515-8796 as the contact number.

**C. September 30, 2019 Seizure of 238 Pounds of Marijuana by Clackamas County Sheriff's Office**

16.     On September 30, 2019, members of the Clackamas County Interagency Task Force (CCITF) responded to XPO Logistics located at 12250 SE Ford St., Clackamas, Oregon.  XPO Logistics had contacted Clackamas County Sheriff's Office (CCSO) dispatch to request a patrol deputy be dispatched to take possession of an illicit shipment that XPO Logistics had discovered during a routine freight inspection.  Based on what was found, that patrol deputy requested assistance from CCITF investigators.

17.     Deputy Daniel Hall, assigned to CCITF as an investigator, responded to the location.  The shipment was listed under XPO Logistics tracking number 776-828323, and consisted of two pallets containing a total of eight cardboard boxes.  The BOL stated the shipment contained "LED lighting, housing, coils, ballasts."  The shipment was picked up by XPO Logistics from a business park located at 5305 NE 121st St., Vancouver, Washington.  The shipper was listed as "Paul" with a company called

"LEDCI" with a phone number of 503-307-7081. The destination on the BOL was 4205 N Macarthur Blvd., Warr Acres, Oklahoma. The recipient was "Paul" with a company called "Next Level" and listed the same 503-307-7081 as the contact number for delivery. XPO Logistics officials informed CCITF that the person who arranged the shipping by phone went by the name "Paul Cavanaugh."

18.     Once at their facility in Clackamas, Oregon, XPO Logistics opened the shipment to vet its contents per its written corporate policy and found what they suspected to be dried and packaged marijuana bud instead of LED light equipment as listed on the BOL. Hall informed that XPO Logistics had opened the freight parcel to inspect it because it was a new customer that had not yet set up an account with the company.

19.     CCITF investigators searched open-source and law enforcements records for companies under the names of "LEDCI" or "Next Level" in those states, and found none of record, leading them to believe the shipper and recipient information was falsified.

20.     On October 1, 2019, CCITF investigators applied for and obtained a search warrant signed by the Honorable Judge Lininger in Clackamas County, Oregon. Upon execution of the search warrant, they found 238 pounds of dried and packaged marijuana in the eight boxes. Investigators also located a "SpyTech" brand GPS tracker in one of the cardboard boxes, along with an external battery feeding power to the tracker. Based on my training and experience, I know that this tracker is available to consumers via retail outlets like Amazon.com, and requires a paid subscription to use.

21.     CCITF investigators observed that the seams of the boxes had been taped inside and out. Forensic examination of the tape located number of latent prints. Forensic technicians with Clackamas County Sheriff's Office (CCSO) were able to match three separate prints from tape segments to a single individual using law enforcement databases. Prints from the right index finger, right palm, and left palm of Kyle Lee CERKONEY were located on pieces of tape used to seal the cardboard boxes.

Affidavit of SA Guy Gino - 8
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**D.  YRC Shipping Records Identify Five Additional Crates Mailed by CERKONEY and/or CRUZ**

22.      A review of subpoenaed shipping records provided by YRC show at least four shipments that listed either Kyle CERKONEY or Jeremy CRUZ as the shippers and/or recipients.  All the shipments through YRC were dropped off at a YRC Terminal at the point of origin and picked up at the destination YRC terminal dock.  Listed below are details of these four shipments.

23.      **Shipment 1:**  On July 19, 2019, a shipment was made under YRC tracking number 855-491456-2.  It originated at the YRC terminal dock in Portland, Oregon.  The shipper was listed as "Kyle" with (503) 830-5108.  The destination was the YRC terminal dock at 12400 Dupont Ave. S, Burnsville, Minnesota.  The destination recipient is also listed as "Kyle" with (503) 830-5108.  The BOL lists that the shipment is c/o "T1L."   I believe "T1L" is the abbreviated name for Transport 1 Logistics, LLC.  The BOL lists the freight content as "LED Lights and Housing" and a listed weight of 550 pounds.  In the pickup notes for the drop off at the Portland, Oregon YRC terminal dock, the BOL says "dock drop by Kyle 503-830-5108 or Jeremy CRUZ 541-515-8796 from T1L."  Under the delivery notes of the BOL, it states, "picking up by Kyle from T1L 503-830-5108."

24.      **Shipment 2:**  On July 23, 2019, a shipment was made under YRC tracking number 785- 844036-5.  The shipment originated at the YRC terminal dock in Portland, Oregon.  The shipper is listed as "Kyle" with 503-830-5108. The destination is the YRC terminal dock at 12340 E Northwest Hwy, Dallas, Texas.  The destination recipient is also listed as "Kyle" with 503-830-5108.  The BOL lists that the shipment is c/o "T1L." The BOL lists the freight content as "LED Lights" and a listed weight of 170 pounds.  In the pickup notes for the drop off at the Portland, Oregon, YRC terminal dock, the BOL says "dock drop by Kyle 503- 830-5108 or Jeremy CRUZ 541-515-8796 from T1L."  Under the delivery notes of the BOL, it states "dock pickup by T1L, Jeremy CRUZ - 541-515-8796 or Kyle CERKONEY - 503-830-5108."

Affidavit of SA Guy Gino - 9
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

25.     **Shipment 3:**  On July 30, 2019, a shipment was made under YRC tracking number 736-736090-8.  It originated at the YRC terminal dock in Portland, Oregon located at 6845 N Cutter Circle.  The shipper is listed at "Kyle" with (503) 830-5108. The destination is the YRC terminal dock at 12400 Dupont Ave S, Burnsville, Minnesota. The destination recipient is also listed as "Kyle" with (503) 830-5108.  The BOL lists that the shipment is c/o "T1L."  The BOL lists the freight content as "LED Lights and Housing" and a listed weight of 450 pounds.  In the pickup notes for the drop off at the Portland, Oregon, YRC terminal dock, the BOL says "dock drop/pick up by Kyle CERKONEY 503-830-5108 or Jeremy CRUZ 541-515-8796 from T1L."  Under the delivery and pickup notes of the BOL, it states the same "dock drop/pick up by Kyle CERKONEY 503-830-5108 or Jeremy CRUZ 541-515-8796 from T1L."

26.     **Shipment 4:**  On August 6, 2019, a shipment was made under YRC tracking number 790-215152-8.  It originated at the YRC terminal dock in Burnsville, Minnesota, located at 12400 Dupont Ave S, Burnsville, Minnesota.  The shipper is listed at "Kyle" with (503) 830-5108.  The destination is the YRC terminal dock at 6845 N Cutter Circle, Portland, Oregon.  The destination recipient is also listed as "Kyle" with (503) 830-5108.  The BOL lists that the shipment is c/o "T1L."  The BOL lists the freight content as "LED Cases" and a listed weight of 150 pounds.  The weight is then crossed out with replaced with a hand-written "80."  In the pickup notes for the drop off at the Portland, Oregon, YRC terminal dock, the BOL says "dock drop by Kyle 503-830-5108 or Jeremy CRUZ 541-515-8796 from T1L."  Under the delivery notes of the BOL, it states "dock pickup by Kyle 503-830-5108 or Jeremy CRUZ 541-515-8796 from T1L."

27.     **Shipment through SAIA:**  Investigators also obtained shipping records provided by SAIA (a freight shipping company), which show that on January 11, 2019, Kyle CERKONEY dropped off a shipment at SAIA's Portland dock under Pro #10248517250-2.  The BOL listed the shipment as one pallet containing "PT LED BULBS CASES," with a listed weight of 300 pounds.  Upon dropping a shipment at the dock, SAIA typically scans the driver's license of the consignee and records the vehicle

Affidavit of SA Guy Gino - 10
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  information on a form sheet titled "Dock Drop/Dock Pickup Form."  The SAIA form for

2  that shipment contains a photocopy of Kyle CERKONEY's Oregon driver license

3  #XXX1728 and listed his vehicle as "Make: Toyota; Model: Tundra; Color: Black; Tag

4  No.: 9U-0058; State: OR."

5  **E. November 22, 2019 Surveillance Observes CERKONEY, CRUZ and DAWE**

6  **    Prepare Crates for Shipping**

7  28.    On November 4, 2019, the Honorable Youlee Yim You in the District of

8  Oregon authorized tracking warrants (19-MC-926) for Kyle CERKONEY's Toyota

9  Tundra OR/9U0058 and Jeremy CRUZ's Toyota Tundra (bearing OR license 587LHX,

10  the **SUBJECT VEHICLE**) (19-MC-946).

11  29.    On November 22, 2019, at approximately 9:45 a.m., surveillance was

12  established at 5305 NE 121st Ave, Unit 103, Vancouver, Washington, which is an

13  industrial unit previously determined through this investigation to be an operational

14  location for the assembly and packing of freight for shipment.  CRUZ and CERKONEY

15  subsequently abandoned this industrial unit following several law enforcement seizures

16  outlined below.

17  30.    Surveillance units observed that CRUZ and the **SUBJECT VEHICLE**

18  were already present at the location.  Shortly thereafter, an unknown white male arrived

19  in a grey Toyota Tacoma and met with CRUZ.  They talked for a while before they

20  unloaded a black musical-style equipment case from the **SUBJECT VEHICLE**.  They

21  then transferred approximately six garbage bags from the bed of the Tacoma into the bed

22  of the **SUBJECT VEHICLE** and the unknown male departed in the grey Tacoma.  I

23  believe, based on my training and experience, that CRUZ obtained marijuana from the

24  driver of the grey Toyota Tacoma in preparation of brokering an out-of-state shipment of

25  marijuana.

26  31.    A short time later, CERKONEY arrived at the industrial unit driving a

27  black Toyota Tundra bearing OR/9U0058 and met with CRUZ.  A review of the tracker

28  data for CERKONEY's black Tundra shows that, prior to arriving, CERKONEY traveled

from his residence to the Cabela's located at 7555 SW Nyberg St., Tualatin, Oregon. During the execution of the Multnomah County search warrant where Officer Groshong discovered 142 pounds of dried and packaged marijuana, that marijuana was contained inside five cardboard boxes that bore the name "PDX Payment Solutions." One of the cardboard boxes discovered during that warrant also contained packaging material which included Cabela's 100 ct 15" x 18" Pre-Cut Vacuum Bags with Odor Blocking Technology. The 142 pounds of dried marijuana was packaged in these bags.

32.     After CERKONEY arrived, both he and CRUZ were observed by investigators unloading the bags from the back of the **SUBJECT VEHICLE** and taking them into Unit 103.

33.     At approximately 2:00 p.m., Robert DAWE arrived at the industrial unit driving a grey 2017 Mercedes Benz OR/TB01139. DAWE parked near CERKONEY and CRUZ's vehicles. DAWE exited the vehicle and walked into Unit 103.

34.     At 2:46 p.m., CRUZ was observed leaving Unit 103 and departing the area in the **SUBJECT VEHICLE**, while CERKONEY remained. Surveillance followed CRUZ to the Lowes Home Improvement store located in Vancouver, Washington, where CRUZ purchased lumber and returned to the industrial unit.

35.     At approximately 3:28 p.m. DAWE was observed exiting Unit 103 wearing black nitrile/latex gloves. He entered his Mercedes Benz and departed the area.

36.     Throughout the day, surveillance members observed CRUZ and CERKONEY outside of Unit 103 smoking cigarettes. Both CRUZ and CERKONEY were observed wearing black nitrile/latex gloves.

37.     At approximately 5:36 p.m., a Ford pick-up truck towing a flatbed trailer arrived at the industrial unit. The driver was observed entering Unit 103.

38.     At 6:02 p.m., CRUZ and the Ford pick-up driver were observed transferring the lumber from the **SUBJECT VEHICLE** into Unit 103. Shortly thereafter, the roll-up door of Unit 103 was opened and two large wooden crates approximately 5' x 5' x 5' were loaded onto the flatbed trailer by CRUZ, CERKONEY, and the Ford pick-up driver.

Affidavit of SA Guy Gino - 12
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

39.     The Ford—loaded with the crates—departed the area and traveled directly to the 2500 block of NE 65th Avenue in Vancouver, Washington.  Once there, the surveillance team observed the vehicle with the crates meet up with a large tractor-trailer. The crates were unloaded from the trailer via forklift and loaded into the enclosed semi-truck with trailer.  Investigators followed the semi-truck into Oregon to a secure facility that houses a freight warehouse/cross dock located in Wood Village, Oregon.  I believe, based on my training and experience, as well as the facts of this investigation that on November 22, 2020, CRUZ, CERKONEY and DAWE met at industrial unit #103 to build out shipping crates designed to package marijuana for illegal distribution outside the state of Oregon.

**F. November 24, 2019 Seizure of $30,000 in Cash from Kyle CERKONEY at Portland International Airport**

40.     Two days later, on November 24, 2019, tracking information for both the **SUBJECT VEHICLE** and CERKONEY's Toyota Tundra showed both arrived at Portland International Airport separately.  CRUZ traveled to Minneapolis, Minnesota. CERKONEY traveled to Fayetteville, Arkansas.

41.     Utilizing geo-location information from CRUZ and CERKONEY's cell phones (from a warrant signed by Judge Youlee Yim You on November 4, 2019 in the District of Oregon), investigators noted that on November 25, 2019, CRUZ and CERKONEY both returned to Portland, Oregon, at different times.

42.     At approximately 4:19 p.m., CRUZ returned to Portland and traveled to his residence.

43.     At approximately 9:00 p.m., surveillance was established on CERKONEY as he arrived at the Portland International Airport.  After departing the plane and walking through the terminal, Portland Police Bureau (PPB) Officers Ben Harris and Christopher Devlin observed CERKONEY watching the interdiction officers who were working at the airport talking with another person.  They observed CERKONEY, who while

Affidavit of SA Guy Gino - 13
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

watching the police drug K9 moved his shoulder bag from his right side, which was closest to the K9, to his left side and started to walk farther away from the police officers.

44.     After observing this, Officer Chris Devlin contacted CERKONEY.  Officer Devlin identified himself as a Portland Police Bureau officer asked CERKONEY if he would allow their drug K9 to sniff his shoulder bag.  CERKONEY stated yes. Officer Groshong deployed his K9 partner "Rex" who sniffed CERKONEY's shoulder bag. Officer Groshong informed me that Rex had alerted positive to drug odor emanating from that bag.

45.     Investigators told CERKONEY that the drug dog had alerted to his bag and asked if they could search it.  CERKONEY stated yes and then informed that the bag only contained "some money."  When asked how much, CERKONEY stated "$20,000." CERKONEY then stated that he is a transportation broker and had traveled to Fayetteville, Arkansas, to buy a semi-truck through an auction being held by JB Hunt. CERKONEY stated that he left for Arkansas two days prior.  When I asked why he traveled with that much currency, CERKONEY told me that there were no Wells Fargo Banks in Arkansas.  Investigators searched his bag and located one large stack of U.S. currency.  CERKONEY also informed that he had approximately $6,000 in his checked luggage, which he stated officers could search.

46.     Investigators escorted CERKONEY to the baggage claim where CERKONEY located his suitcase.  Before opening it, Officer Groshong deployed his K9 partner Rex who performed an open-air sniff on the suitcase.  Officer Groshong informed me that his K9 partner Rex alerted to drug odor emanating from the suitcase.

47.     Officer Devlin searched the suitcase and located several stacks of U.S. currency in rubber bands inside a plastic grocery bag.  The suitcase also contained one days' worth clothing and a cordless drill.

48.     Based on K9 alert and the known activities of CRUZ and CERKONEY the last several days, investigators seized the U.S. currency, which totaled $30,000.

Affidavit of SA Guy Gino - 14
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

49.     Based on my training and experience, I believe that DAWE, CRUZ, and CERKONEY loaded marijuana inside the crates and arranged for the crates to be transported to Minneapolis, Minnesota, and Fayetteville, Arkansas, via semi-trucks.  I believe that both CRUZ and CERKONEY flew to those locations to meet with the crates containing marijuana and then provided the marijuana to others in exchange for U.S. currency, a portion of which law enforcement seized from CERKONEY upon his return to Portland, Oregon.

**G. December 2019 Crate Departs Vancouver, Washington in Semi-Truck and CRUZ Flies to Minneapolis, Minnesota**

50.     On December 3, 2019, Oregon State Trooper Kyle Olson observed CRUZ driving the **SUBJECT VEHICLE**, pulling a white enclosed cargo trailer in Eugene, Oregon, around 12:10 p.m., in the area of the 2900 block of Matt Drive.  CRUZ drove the **SUBJECT VEHICLE** and the trailer to a warehouse complex located at 86360 Franklin Blvd., Eugene, Oregon.  CRUZ parked the **SUBJECT VEHICLE** with the white trailer in front of a row of small warehouse buildings.  At about 1:15 p.m., CRUZ opened the back of the trailer and was seen by Trooper Olson unloading flats of immature marijuana plants into one of the person-sized doors of the "B" building.  Trooper Olson was able to see into the building via the propped-open door, and observed what he recognized to be an active indoor marijuana grow.  CRUZ then drove the **SUBJECT VEHICLE** and the white trailer back to the facility at 5305 NE 121st Ave., Unit 103, Vancouver, Washington, arriving at about 5:30 p.m.  There, Officer Harris observed CRUZ making multiple trips back and forth between the door of Unit 103 and the back of the trailer, appearing that CRUZ was unloading items from the back of the trailer to the interior of Unit 103.

51.     On December 20, 2019, a small Home Depot rental van arrived at 5305 NE 121st Ave., Unit 103, Vancouver, Washington, and was observed backing into the unit before the garage door closed.  The vehicle remained inside for thirteen minutes and then was observed exiting Unit 103 and driving away.  Twenty minutes later, DAWE arrived

driving his grey Mercedes and entered Unit 103.  DAWE was accompanied by a minor female, whom investigators believe to be his young daughter.  DAWE remained inside 5305 NE 121st Ave., Unit 103 for less than 30 minutes.  DAWE was observed returning to Unit 103 two hours later, again with his young daughter.  This time he remained for an hour and departed in his grey Mercedes.

52.     On December 23, 2019 at about 2:29 p.m., surveillance observed CERKONEY arriving at 5305 NE 121st Ave., Vancouver, Washington, in his black Tundra.  CERKONEY went into Unit 103.  He reappeared outside a few minutes later, talking on a cell phone.  Shortly thereafter, a large semi-truck and trailer arrived and pulled in front of Unit 103.  A minute later, CRUZ arrived in the **SUBJECT VEHICLE** and parked nearby, never exiting the truck.  Meanwhile CERKONEY was seen loading a large wooden crate (consistent in size and composition to past crates) into the semi-trailer using a manual-style forklift.  After loading the crate, CERKONEY returned the forklift to Unit 103 and CRUZ and CERKONEY subsequently departed the location.

53.     On December 26, 2019, CRUZ flew to Minneapolis, Minnesota, where he remained for two days before flying back to Portland, Oregon, on December 28, 2019.  CRUZ's travel was determined, in part, based on geolocation data for his phone.

54.     I believe based on my training and experience that on December 20, 2019, marijuana was delivered to 5305 NE 121st Ave., Vancouver, Washington, after being transported there in a Home Depot rental van.  I believe that on that same date DAWE, CERKONEY, and CRUZ placed the marijuana inside the crate.  I believe that on December 23, 2019, CERKONEY placed the crate with marijuana inside a semi-truck's trailer for shipment.  I further believe on December 26, 2019, CRUZ flew to Minneapolis—where he personally received the crate that departed their shop on December 23rd in order to further distribute the marijuana the crate contained—before returning to Portland, Oregon, on December 28, 2019.

Affidavit of SA Guy Gino - 16
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**H. January 2020 CERKONEY Travels to Dallas, Texas and CRUZ Travels to New York and Pennsylvania**

55.     Utilizing physical surveillance, remote surveillance, geolocation and tracking data on vehicles, investigators identified the following trips taken by CRUZ and/or CERKONEY consistent with their ongoing illicit distribution of marijuana outside the state of Oregon.

56.     On January 16, 2020, CRUZ traveled to Minneapolis, Minnesota, and returned to Portland, Oregon, on January 17, 2020.

57.     On January 17, 2020, investigators observed DAWE and then CERKONEY at the Vancouver, Washington warehouse.  DAWE departed the warehouse and a short time later a semi-truck with an enclosed bed arrived and CERKONEY was observed loading a crate into the bed of the semi-truck.

58.     On January 24, 2020, CRUZ and CERKONEY both traveled to Portland International Airport separately, in their respective Tundra pickups.

59.     CERKONEY arrived at the Portland International Airport at about 10:30 a.m. on January 24, 2020.  CERKONEY flew to the Dallas-Fort Worth International Airport, arriving at about 5:38 p.m. CST.  CERKONEY remained in the Dallas, Texas metro area, until flying back to the Portland International Airport on January 26, 2020, landing at about 9:10 p.m.  The quick turn-around of CERKONEY's travel is consistent with his past travel to destination cities to pick up marijuana and deliver to their customers in exchange for drug proceeds.

60.     CRUZ flew out of Portland, Oregon at about 8:03 a.m., to Seattle-Tacoma International Airport, and then onto Boston Logan International Airport in Boston, Massachusetts.  From there, CRUZ flew to the Buffalo Niagara International Airport, arriving at about 10:00 p.m. EST.  CRUZ remained in Buffalo, New York overnight.  Based on information obtained via subpoena, CRUZ booked a room at the Buffalo Grand Hotel using Priceline.com with a check-out date of January 25, 2020.

Affidavit of SA Guy Gino - 17
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

61.     Continuing to utilize geolocation data for his phone (from a warrant signed by Judge Stacie Beckerman on December 26, 2019, in the District of Oregon) investigators determined CRUZ  traveled to Pennsylvania, stayed the night, the proceeded to various parts of New York City, including Staten Island and Brooklyn, in which he stayed until January 28, 2020.  On January 28th, CRUZ travelled to JFK Airport and returned a car rental at the airport that afternoon.

62.     I believe, based on my training and experience that on January 17, 2020, CERKONEY constructed crates inside Unit 103 and then loaded marijuana inside the crates, which were loaded into semi-truck that evening.  I believe that marijuana arrived at Unit 103 in the Home Depot rental van, which is the van that DAWE met with at Unit 103 on January 17, 2020.  I believe that both CERKONEY and CRUZ traveled to separate destinations across the country to receive the marijuana-laden crates that were shipped from 5305 NE 121st Ave., Unit 103, Vancouver, Washington, on January 17, 2020 and January 21, 2020.  I believe both CERKONEY and CRUZ received each crate in person in order to remove the marijuana and break down for further distribution at those locales.

**I.   March 2020 CRUZ Flies to Arkansas and Investigators Intercept a Parcel sent from Arkansas to CRUZ's Vancouver, Washington Residence**

63.     On March 8, 2020, based on tracker information for the **SUBJECT VEHICLE**, CRUZ traveled to Portland International Airport from his residence, arriving about 10:10 a.m.  Geolocation data for his phone showed that CRUZ traveled to the Northwest Arkansas Regional Airport after connecting through Houston, Texas.  He arrived in Arkansas just prior to 9:30 p.m. CDT on March 8, 2020.  Geolocation data for CRUZ's phone shows that he stayed in the Bentonville, Arkansas area until about 4:45 p.m. CDT on March 10, 2020, at which time CRUZ flew to the Minneapolis-St Paul Airport and then connected to Portland International Airport where he arrived at about 9:30 p.m. local time.  Officer Harris and Officer Castaneda observed CRUZ exit the airport with a black duffel bag that was his carry-on luggage, bypass the baggage claim,

Affidavit of SA Guy Gino - 18
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

and walk straight to the **SUBJECT VEHICLE**, parked in the long-term parking garage of the airport.

64.     On March 12, 2020, investigators were alerted by United States Postal Inspector Hardin that there was an inbound mail parcel (USPS tracking #: 9505510869960070271675) destined for CRUZ's residence.  The parcel was mailed from Cave Springs, Arkansas, on March 10, 2020, which is during the time that geolocation data for his phone showed CRUZ within that geographic area.  The parcel was approximately 33 pounds and was categorized as a medium cardboard box.  Postage paid was $90.00, and the parcel was addressed to CRUZ's infant son, M.P.  CRUZ was listed as the sender, but the sender address was listed as his prior residence in Portland.  When the parcel arrived in the Portland, Oregon, postal sorting facility, Inspector Hardin applied for and received a search warrant from the District of Oregon for the parcel after a drug K9 alerted to the parcel.  The parcel contained $60,000 in U.S. currency, 77 Alprazolam pills, and two unknown white pills secreted into tools and electronics still in their retail packaging.  The cash was split into five vacuum-sealed bags, each sealed inside a second vacuum-sealed bag, and then placed in individual Mylar bags.

65.     I know based on my training and experience that this type of packaging is utilized to try to contain drug odor in order to prevent detection by drug K9s.  The parcel contained, among other things, a vacuum sealer and extra vacuum-seal bags identical to the ones used the package the cash.  The yellow Alprazolam pills and unknown white pills were similarly vacuum-sealed as well.  I believe that the $60,000 in U.S. currency are the proceeds of a shipment of marijuana shipped out by DAWE, CERKONEY, and CRUZ.  I believe these proceeds were shipped via parcel to mitigate the chance of an airport interdiction by investigators, as had happened to CERKONEY on November 25, 2019.

Affidavit of SA Guy Gino - 19
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2

**J. April 2020, Investigators Seize 394 Kilograms of Marijuana Bud and 22 Kilograms of BHO Oil and Shatter**

3
4
5
6

66.    On April 3, 2020, investigators established surveillance at 5305 NE 121st Ave, Vancouver, Washington.  Tracker data for the **SUBJECT VEHICLE** showed that CRUZ had been present at the location for the majority of the day, arriving at about 8:17 a.m., which was corroborated by geolocation data for his phone.

7
8
9
10
11
12
13

67.    CERKONEY arrived at the same location at about 10:03 a.m., after tracker data for CERKONEY's Tundra OR/9U0058 showed it had stopped at the Home Depot store at 1728 N. Tomahawk Island Drive, Portland, Oregon, before arriving at 5305 NE 121st Ave., Vancouver, Washington, with a load of lumber in the bed.  CERKONEY parked directly in front of Unit 103, and then went inside and opened the large roll-up door and unloaded the lumber from the bed of his vehicle.  CERKONEY and CRUZ were in and out of Unit 103 most of the day.

14
15
16

68.    Later that evening at approximately 7:45 p.m., CRUZ left his house and was followed by Investigators back to 5305 NE 121st Ave., Vancouver, Washington, where he arrived at about 7:57 p.m.

17
18
19
20
21
22
23
24
25
26
27
28

69.    At about 8:10 p.m., a green Kenworth semi-truck (bearing Oregon plate YAIT420) hauling a 53-foot refrigerated trailer (bearing Oregon plate HU66189) pulled into the warehouse complex, and stopped in front of Unit 103.  The driver exited the truck and entered Unit 103 with CRUZ.  The pair remained inside until about 8:22 p.m., when the roll-up door for Unit 103 opened and the two were seen pushing out a large crate on the manual-style forklift.  The crate was similar in size and construction to crates seen shipped from Unit 103 in the past.  The crate was approximately eight feet wide, six feet tall, and four feet deep.  The driver opened the rear doors of the semi-trailer and assisted CRUZ with loading the crate into the trailer.  The pair were seen pushing the crate into the front of the trailer before returning to the interior of Unit 103 and then emerging with second crate the same size as the first.  They loaded the second crate, leaving it near the back of the trailer, and then returned to Unit 103 where they retrieved a

third crate that was of similar width and depth of the first two, but appeared to be only half the height. After loading the third crate, the driver closed the rear doors of the semi-trailer at about 8:44 p.m., and departed the warehouse complex at about 8:52 p.m. CRUZ stayed in Unit 103 until about 9:18 p.m., at which time tracker data for CRUZ showed him returning to his residence.

70.     Investigators followed the semi-truck as it proceeded to Washington Highway 14 eastbound down the Columbia River Gorge away from the Vancouver metro area. The truck was followed on Highway 14 until it crossed into Oregon at Hood River and then continued eastbound on I-84 towards The Dalles. At about 10:35 p.m., Oregon State Police (OSP) Trooper Zuniga stopped the semi-truck for traffic violations. Trooper Zuniga had the driver, identified as Andrey Gorash, follow him to the nearby OSP office at the next exit for a truck inspection. During the course of the truck inspection, Trooper Zuniga gained consent to inspect the contents of the trailer. Officer Groshong assisted the inspection with his drug K9, and received a positive alert to the odor of drugs coming from the crates in the trailer. The three crates were the only contents of the trailer. Trooper Zuniga opened the crates and discovered that the crates contained 15 cardboard boxes loaded with packaged marijuana bud. Bills of lading obtained from Gorash, the driver, showed the crates were bound for Ohio and Minnesota. The 15 boxes were unloaded from the crates and seized. Gorash was released from the scene.

71.     Further processing of the seized evidence yielded 394 kilograms of dried and vacuum-sealed marijuana bud and 22 kilograms of BHO oil and shatter. Much of the marijuana bud was packaged in Cabela's brand bags, similar to previous seizures.

**K. May 2020 Travel by CERKONEY to Atlanta, Georgia, and Houston, Texas**

72.     On May 2, 2020, at approximately 2:57 p.m., geolocation data (from a warrant signed by Judge Jolie Russo on April 17, 2020 in the District of Oregon) for CERKONEY's phone showed CERKONEY near Atlanta International Airport. Data then went offline, again indicative of airline travel. At about 4:54 p.m., geolocation data for his phone showed CERKONEY at the George Bush International Airport in Houston,

1  Texas.  Geolocation data for his phone shows that CERKONEY remained in the
2  Houston, Texas metro area until May 5, 2020.

3         73.     Subpoenaed information shows that CERKONEY rented a blue 2020
4  Dodge Ram pickup truck at the George Bush International Airport in Houston, Texas
5  from Enterprise Rent-a-Car on May 2, 2020, and returned the Dodge truck to the same
6  location on May 5, 2020 as corroborated by geolocation data for his phone.
7  CERKONEY then flew to the Denver International Airport in Denver, Colorado, and
8  returned to the Portland International Airport.

9  **L.  October 2020 Activity Leading to Seizure of 277 Kilograms of Marijuana by**
10    **Investigators**

11        74.     On October 6, 2020, according to tracker data for the **SUBJECT**
12  **VEHICLE**, CRUZ traveled to the Eugene area along I-5.  He arrived at the Franklin
13  Blvd. marijuana grow site at about 12:12 p.m.  He contacted a male at the complex and
14  then left and returned to the location a couple times before coming back a final time at
15  about 1:16 p.m.  Shortly after, surveillance observed DAWE arrived at the complex in his
16  Ford F150 (OR/060MGG), which he had been repeatedly seen driving but had just
17  recently been issued license plates.  DAWE backed his truck up to one of the units and he
18  and CRUZ were seen unloading full large plastic bags from the back of DAWE's pickup
19  truck into one of the units in the complex.  They remained inside the unit for a few
20  minutes.  At about 1:31 p.m., DAWE was seen loading five large garbage bags from the
21  interior of the building into the back of his Ford pickup.  The bags appeared to be full.
22  DAWE then loaded one smaller, clear plastic bag that appeared to contain harvested
23  marijuana buds into the back of the F-150.  DAWE then locked the tailgate of his truck
24  and left the complex.  CRUZ left the complex shortly afterwards as well.

25        75.     Based on tracker data for the **SUBJECT VEHICLE**, CRUZ went to the
26  Home Depot store at 1950 SE Minter Bridge Road, Hillsboro, Oregon, on October 11,
27  2020 at about 4:42 p.m.  Surveillance observed him return to his residence at 5924 SW
28  229th Ave at about 5:10 p.m. with the back of the **SUBJECT VEHICLE** loaded with at

least six sheets of plywood, consistent with the plywood used to build the shipping crates that have been previously seized and observed.

76.     On October 12, 2020, tracker data for the black Tundra showed CERKONEY go to the Cabela's store at 7555 SW Nyberg Road at about 11:02 a.m. and remained until about 11:30 a.m.  Previously seized shipments of marijuana have been packaged in Cabela's brand vacuum-seal bags.

77.     On October 16, 2020, at about 9:59 a.m., investigators watched a white Penske truck (IN/2461269) leave DAWE's residence at 5924 SW 229th Ave, Beaverton, Oregon.  The Penske had been visually concealed behind the residence despite ample parking on the rural property.

78.     The Penske's movements were monitored by surveillance and it was followed to the area of 823 SE 3rd Ave, Portland, Oregon, where it arrived around 10:30 a.m.  Investigators were able to identify the driver of the Penske truck as Jeremiah CRUZ.  CRUZ remained in the area for about two hours until a Volvo semi-truck with a 53-foot refrigerated trailer (OR/HV15528) pulled up in front of the Penske truck at about 12:30 p.m.  The driver of the semi-truck was a white male with brown hair wearing a blue and white plaid shirt.  The driver was later identified as Vasiliy Nogin.  Investigators watched as CRUZ and Nogin were assisted by an unknown subject on a forklift from a nearby business in loading two large crates from the Penske truck into the trailer connected to the semi-truck.  The two crates were nearly identical in size and appearance.  They were approximately eight feet in length, three feet wide, and five feet tall.  These dimensions are similar to crates filled with marijuana previously seized in this investigation bound for out-of-state destinations.  The crates observed on this date were wrapped in a white plastic and identification/tracking numbers were written in permanent marker in large font on the white plastic exterior.

79.     After the two crates were loaded into the semi-truck, CRUZ left the area in the Penske truck at about 12:42 p.m.  Nogin departed the area in the Volvo semi-truck at about 1:00 p.m.  Investigators followed Nogin in the Volvo semi-truck, keeping constant

Affidavit of SA Guy Gino - 23
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

visual on the trailer.  Nogin stopped for gas and food in Troutdale, Oregon, before proceeding eastbound on I-84 down the Columbia River Gorge.  In Hood River, Oregon, Nogin merged onto southbound Highway 35 and proceeded to Diamond Fruit Growers at 3515 Chevron Drive, Hood River, Oregon, where he took on a load of 24 pallets of pears before returning to eastbound I-84.

80.     In The Dalles, Oregon, Oregon State Police stopped Nogin for traffic violations.  Nogin was escorted by troopers to a nearby Oregon State Police office due to his log book being out of compliance.  A search of the trailer by investigators revealed the two crates that CRUZ had transferred to Nogin in the front of the trailer.  The crates had the same appearance and markings observed by investigators at the time they were loaded.  Inside the two crates were twelve cardboard boxes that contained a combined 610 pounds of vacuum-sealed marijuana bud with markings denoting their respective strains.  The vacuum-sealed marijuana bud was packaged in the same manner as the previous shipments seized.

81.     A bill of lading provided by Nogin indicated that the load was destined for San Antonio, Texas, and Nogin confirmed he was driving the load all the way to San Antonio, Texas, after dropping off the load of pears en route.  Further examination of the bill of lading showed the shipper listed as "Paul Cavanaugh," which is the same alias used as the shipping party on the shipment seized by Clackamas County on September 30, 2019.

82.     Nogin told investigators that he also previously picked up a similar load in a similar manner at the same location within the last two months.  He said the individual he met that time was not the same as on this day, and proceeded to describe an individual resembling Kyle CERKONEY.

//

//

//

Affidavit of SA Guy Gino - 24
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**M.     CRUZ Moves to 9610 NE 106th Way, Vancouver, Washington 98662 (SUBJECT PREMISES 1)**

83.     Special Agent Scott McGeachy conducted a review of the Wells Fargo Bank account ending in 1086 for Jeremy CRUZ for the time period of January 2018 through August 2020 and noted CRUZ had over $225,000 in cash deposits.

84.     Special Agent Scott McGeachy conducted a review of the Wells Fargo Bank account ending in 2983 for PDX Payment Solutions, LLC, for the time period of June 2019 through August 2020 and noted PDX Payment Solutions, LLC, had cash deposits in excess of $63,000.

85.     In October 2020, investigators noticed that tracker data for the **SUBJECT VEHICLE** showed him beginning to visit the 9600 block of NE 106th Way, Vancouver, on a regular basis.  On the evening of Tuesday, October 20, 2020, at about 8:30 p.m., Officer Harris observed the **SUBJECT VEHICLE** in the driveway of 9610 NE 106th Way (**SUBJECT PREMISES 1**).  There was a smaller trailer next to the truck in the driveway, but otherwise no other vehicles were in the driveway.  The garage door of the residence was open and the garage contained many boxes and other household items consistent with someone moving into a new place.  IRS-CID Special Agent Scott McGeachy was able to confirm through public utility records that CRUZ activated service at the location on October 12, 2020, and identified PDX Payment Solutions as his employer.  Additionally, IRS-CID Special Agent Joseph Tichy also observed the **SUBJECT VEHICLE** at the location on October 22, 2020 at about 8:30 p.m., and again at 8:30 a.m. the next morning, October 23, 2020.

86.     I know from my training and experience that when individuals move to a new residence they commonly transfer their personal financial records including bank statements, tax records for their corporations, bank cards, credit cards, receipts and other personal and business related documents.  While **SUBJECT PREMISES 1** may be a new residence for CRUZ, I believe that the location will contain items of evidence that

Affidavit of SA Guy Gino - 25
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

CRUZ has retained and kept in his control, to include packaging material, financial records, and ill-gotten fruits from the DTO's operation.

**N. CRUZ's Prior Residence at 1801 NW 78th Road, Vancouver, Washington 98665 (SUBJECT PREMISES 2)**

87.     Emily Peralta is the former girlfriend of Jeremy CRUZ and they lived together at 1801 NW 78th Road, Vancouver, Washington (**SUBJECT PREMISES 2**), until CRUZ moved out of the residence around the first week of July 2020.  During the course of the investigation, investigators identified Peralta depositing large sums of cash in round, even whole numbers into her Bank of America account ending in 5399, which is consistent with laundering drug proceeds.  During this period of time, Peralta owned and operated "NW Style" hair salon and received regular monies from her lawful employment.

88.     Special Agent Scott McGeachy reviewed Peralta's Bank of America account ending in 5399 with a listed address of the **SUBJECT PREMISES 2**.   The Bank of America account ending in 5399 was opened on October 4, 2019, with a cash deposit of $3,150.  From October 4, 2019, until July 30, 2020, Peralta received cash deposits estimated to be approximately $20,000.  Peralta received an additional $6,869 in Zelle transfers from Jeremy CRUZ.  Investigators have identified CRUZ's sole source of income is the illegal distribution of marijuana.  On August 5, 2020, Peralta deposited a cashier's check for $30,000 with the memo indicating it was for the sale of "NW Style" salon.  Investigators believe Peralta owned and operated NW Style and commingled cash deposits from CRUZ's drug trafficking activities with regular monies lawfully earned from "NW Style."

89.     According to police reports, on September 8, 2020, Emily Peralta called the Clark County (Washington) Sheriff's Office after discovering illicit items left behind by CRUZ at the **SUBJECT PREMISES 2**.  Deputies recovered two totes that contained 7.48 pounds of packaged and loose marijuana bud, as well as concentrated marijuana

Affidavit of SA Guy Gino - 26
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

dabs in a shed on the property.  Deputies also noted packaging materials and an industrial vacuum sealer on the floor of the shed.

90.    While Clark County Sheriff's Office deputies recovered the marijuana, I believe that the **SUBJECT PREMISES 2** still contains evidence, such as financial records (including bank records for Peralta's Bank of America account ending in 5399), which will identify additional evidence of money laundered by CRUZ through Peralta's Bank of America account.  Furthermore, I anticipate seizing cash deposit slips, credit card records and cell phones regarding communication between Peralta and CRUZ, including instructions on CRUZ laundering drug proceeds through Peralta's Bank of America account.

91.    On October 25, 2020, at around 9:00 p.m., Officer Harris observed a white BMW sedan bearing OR/619KSL in the driveway of the **SUBJECT PREMISES 2**. That BMW is registered to Jeremy CRUZ and had been spotted in the driveway of the location before CRUZ's departure in July, and is likely Peralta's vehicle to drive.

## IV.    COMMON CHARACTERISTICS OF DRUG TRAFFICKERS

92.    Based upon my training, experience, and participation in this and other investigations involving drug trafficking, my conversations with other experienced investigators and law enforcement agents with whom I work, and interviews of individuals who have been involved in the trafficking of drugs, I have learned and know the following.

93.    Drug trafficking organizations often utilize "stash houses" to conceal their illegal activities and contraband. These houses often remain unoccupied, with minimal activity, in order to avoid scrutiny.  Drug traffickers often utilize multiple "stash houses" to conceal large amounts of drugs and to keep law enforcement and/or competitors from finding their drugs.

94.    It is common to find papers, letters, billings, documents, and other writings, which show ownership, dominion, and control of businesses, residences, and/or vehicles in the residences and vehicles of drug traffickers.  Items of personal property that tend to

Affidavit of SA Guy Gino - 27
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

identify the person(s) in residence, occupancy, control, or ownership of the subject premises also include canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, keys, financial papers, rental receipts and property ownership papers, personal and business telephone and address books and telephone toll records; and other personal papers or identification cards in the names of subjects involved in the criminal activity being investigated.

95.     It is common for drug dealers to secrete proceeds of illegal drug sales and records of illegal drug transactions in secure locations within their residences, and/or vehicles for their ready access and to conceal them from law enforcement authorities.

96.     Drug traffickers amass large proceeds from the illegal sale of controlled substances that they attempt to legitimize.  To accomplish these goals, drug traffickers utilize financial institutions and their attendant services, securities, cashier's checks, safe deposit boxes, money drafts, real estate, shell operations, and business fronts.  Persons involved in drug trafficking and/or money laundering keep papers relating to these activities for future reference, including Federal and State tax records, loan records, mortgages, deeds, titles, certificates of ownership, records regarding investments and securities, safe deposit box rental records and keys, and photographs. I know from my training and experience that often items of value are concealed by persons involved in large-scale drug trafficking inside of safes, lock boxes, and other secure locations within their residences, outbuildings, and vehicles.

97.     Drug traffickers very often place assets in names other than their own to avoid detection of these assets by government agencies, and that even though these assets are in other individual or business names, the drug dealers actually own and continue to use these assets and exercise dominion and control over them.

98.     Unexplained wealth is probative evidence of crimes motivated by greed, in particular, illegal trafficking in drugs.

Affidavit of SA Guy Gino - 28
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

99.     Drug traffickers often document aspects of their criminal conduct through photographs or videos of themselves, their associates, their property, and their product.  Drug traffickers usually maintain these photographs or videos in their possession.

100.     Drug traffickers must maintain large amounts of United States currency in order to maintain and finance their on-going illegal drug trafficking business.

101.     Drug traffickers utilize mobile electronic devices including cellular telephones and other wireless communication devices for the purpose of maintaining their illegal trafficking business. Such equipment often contains evidence of these illegal activities. Drug traffickers prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require.  Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs.  Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily.  Since cellular phone use became widespread, every drug dealer I have interacted with has used one or more cellular telephones for his or her drug business.  I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business.  Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes.  This includes the following:

a.     The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number (ESN), Mobile Identification Number (MIN), International Mobile Subscriber Identity (IMSI) number, or International Mobile Equipment Identity (IMEI) number).  These are important evidence because they reveal the service provider, allow agents to obtain subscriber information, and uniquely identify the telephone.  This information can be used to obtain toll

records, to identify contacts by the particular telephone with other cellular
telephones used by co-conspirators, to identify other telephones used by the same
subscriber or purchased as part of a package, and to confirm if the telephone was
contacted by a cooperating source.

b.      The stored list of recent received calls and sent calls.  This is important
evidence because it identifies telephones recently in contact with the telephone
user.  This is valuable information in a drug investigation because it will identify
telephones used by other members of the organization, such as suppliers,
distributors and customers, and it confirms the date and time of contacts.  If the
user is under surveillance, it identifies what number he called during or around the
time of a surveilled drug transaction or meeting.  Even if a contact involves a
telephone user not part of the conspiracy, the information is helpful (and thus is
evidence) because it leads to friends and associates of the user who can identify
the user, help locate the user, and provide information about the user.  Identifying
a defendant's law-abiding friends is often just as useful as identifying his drug-
trafficking associates.

c.      Stored text messages.  These are important evidence, similar to stored
numbers.  Agents can identify both drug associates, and friends of the user who
likely have helpful information about the user, his location, and his activities.

d.      Photographs on a cellular telephone.  These are important evidence because
they help identify the user, either through his or her own picture, or through
pictures of friends, family, and associates that can identify the user.  Pictures also
identify associates likely to be members of the drug trafficking organization.
Some drug traffickers photograph groups of associates, sometimes posing with
weapons and showing identifiable gang signs.  Also, digital photos often have
embedded "geocode" information within them.  Geocode information is typically
the longitude and latitude where the photo was taken.  Showing where the photo
was taken can have evidentiary value.  This location information is helpful

Affidavit of SA Guy Gino - 30
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

e.      Stored address records.  These are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

f.      It is common for drug traffickers to use encrypted means of communication, such as WhatsApp, Signal, Wickr, and Telegram, to attempt to avoid detection by law enforcement.  It is common for drug traffickers to install and use these apps on their phones in order to make encrypted calls and send encrypted messages.

102.   It is common for drug dealers to possess drugs, drug paraphernalia and other items which are associated with the importation, manufacture, sale and use of controlled substances such as scales, containers, cutting agents and packaging materials in their residences and vehicles.

103.   Drug traffickers commonly have in their possession, that is, on their person, and/or at their businesses, residences, storage lockers, and/or vehicles, firearms, and other weapons, which are used to protect and secure their property.

104.   Manufacturers, importers and distributors of drugs frequently try to conceal their identities by using fraudulent names and identification cards.  Once identities have been created or stolen from other citizens, drug traffickers use those identifications to falsify records such as Department of Motor Vehicle and phone records for the purpose of theft of services and to evade detection by law enforcement.

105.   It is a common practice for drug traffickers to maintain records relating to their drug trafficking activities in their residences, storage lockers, and businesses.  Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances to their clients, or alternatively, will be "fronted" these items from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to

Affidavit of SA Guy Gino - 31
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

readily ascertain current balances.  These records include "pay and owe" records to show balances due for drugs sold in the past (pay) and for payments expected (owe) as to the trafficker's suppliers and distributors, telephone and address listings of clients and suppliers, and records of drug proceeds.  These records are commonly kept for an extended period of time.

106.    Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the importation, transportation, and distribution of controlled substances.   These documents whether in physical or electronic form, are maintained where the traffickers have ready access to them.  These documents include travel records, receipts, airline tickets, auto rental agreements, invoices, and other memorandum disclosing acquisition of assets and personal or business expenses.  I also know that the most promising place to find such items is within drug traffickers' residences.

107.    Evidence of illegal trafficking of controlled substances and money laundering, such as the items described above, is likely to be found where the dealers live even if the distribution or transaction did not occur at the residence.  Moreover, individuals involved in large, long-term drug trafficking organizations typically maintain such evidence for an extended period of time.

108.    Latent fingerprints and palm prints are frequently found in drug traffickers residences and vehicles, and can be evidence of dominion, control, and possession of those residences and vehicles.

## V.    CONCLUSION

109.    Based on the foregoing, I have probable cause to believe, and I do believe, that CRUZ, CERKONEY, and DAWE, committed violations of Title 21, United States Code, Sections 841(a)(1) and 846, possession with intent to distribute and conspiracy to possess with intent to distribute controlled substances, and Title 18, United States Code, Section 1956, laundering of monetary instruments, and that contraband, evidence, fruits and instrumentalities of those offenses, as described above and in Attachment B, are

Affidavit of SA Guy Gino - 32
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT A1**
**Location to be Searched**

The property to be searched is 9610 NE 106th Way, Vancouver, Washington 98662 (the **SUBJECT PREMISES 1**), described as a brown-colored, single-family home located on the north side of NE 106th Way, and is the second home west of NE 97th Ave.  The front of the home has a lighter bottom half and a light-colored garage door.  The front door is dark in color and faces to the south towards NE 106th Way.





Affidavit of SA Guy Gino - 34
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

2

**ATTACHMENT A2**
**Location to be Searched**

3  The property to be searched is 1801 NW 78th Road, Vancouver, Washington

4  98665 (the **SUBJECT PREMISES 2**), described as a clay-colored, single family home

5  with stone veneer and a wood front door which faces north. The residence is located on

6  the south side of NW 78th Road, and is bordered by NW 78th Street on the south side,

7  and is the easternmost house on the south side of NW 78th Road.

8

9

10

11

12

13

14

15

16

17



18

19

20

21

22

23

24

25

26

27

28



Affidavit of SA Guy Gino - 35
USAO# 2020R00405

1

2

## **ATTACHMENT A3**
### **Vehicle to be Searched**

3

4

 The vehicle to be searched is a 2015 white Toyota Tundra bearing OR license 587LHX and VIN: 5TFAW5F14FX477577 (the **SUBJECT VEHICLE**).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20



21

22

23

24

25

26

27

28

Affidavit of SA Guy Gino - 36
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**
**Items to be Seized**

The items to be searched for, seized, and examined, are those items on the premises located at 9610 NE 106th Way, Vancouver, Washington 98662, and 1801 NW 78th Road, Vancouver, Washington 98665, and in the 2015 white Toyota Tundra pickup truck, bearing OR license 587LHX and VIN: 5TFAW5F14FX477577, referenced in Attachments A1-A3, that contain evidence, contraband, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, possession with intent to distribute and conspiracy to possess with intent to distribute controlled substances; Title 18, United States Code, Section 1956, money laundering; and Title 31, United States Code, Sections 5313 and 5324(a), structuring transactions to evade the reporting requirement.

The items to be seized cover the period of January 1, 2017 through the date of the execution of the search warrant are as follows:

a. Controlled substances in violation of 21 U.S.C. Section 841(a)(1) including marijuana and/or marijuana extracts,

b. Paraphernalia for packaging, smuggling, manufacturing, weighing and distributing controlled substances, for example: crates constructed of pallets and plywood, scales, vacuum-sealers, vacuum-sealer bags, cardboard boxes, moisture-control packets, plastic bags, and heat sealing devices,

c. Financial profits, proceeds and instrumentalities of trafficking narcotics, and money laundering, including U.S Currency;

d. Firearms and other dangerous weapons, ammunition and body armor;

e. Books, records, receipts, notes, ledgers, and other documents relating to financial transaction, communications between members of the conspiracy, and evidence of the use of businesses to disguise profits, construction records, real estate purchase documents, building permits;

f. Personal books and papers reflecting names, addresses, telephone numbers, articles of clothing, photos and other contacts including identification data

Affidavit of SA Guy Gino - 37
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

relating to the distribution of controlled substances, structuring and money laundering;

g.   Financial records and personal objects relating to money laundering and expenditures of money and wealth, to-wit: money orders, wire transfer records, cashier's checks and receipts, checks, bank account records, passbooks, tax records, safe deposit box keys, and records, checkbooks, title files, vehicle purchases and check registers, as well as precious metals/jewelry such as gold, silver, diamonds, Rolex watches, earrings, necklaces, etc.;

h.   Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises, including but not limited to canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys;

i.   Documents indicating travel in interstate and foreign commerce, to include airline tickets, notes and travel itineraries; airline schedules; bills; charge card receipts; hotel, motel, and car rental statements; correspondence with travel agencies and other travel-related businesses; airline, rent-a-car, and hotel frequent flier or user cards and statements; passports and visas; telephone bills; photographs of foreign locations; and papers relating to domestic and international travel;

j.   Cellular telephones other electronic communication devices which possess the capability to access the internet, book transportation services online, access e-mail, send and receive text messages, store records of financial transactions and debts, access online bank records, which constitute evidence of participation in a conspiracy to distribute controlled substances, structuring and money laundering.  These devices may be searched for:

- Assigned telephone number and other identifying numbers (e.g., ESN, MIN, IMSI, IMEI);

- Stored list of recent received, sent, or missed calls;

- Stored address records and stored contact information;

- Stored photographs and videos related to the aforementioned crimes of investigation, such as photographs and videos of narcotics, currency, guns or other weapons, tracking numbers, codes, account information, suspected

Affidavit of SA Guy Gino - 38
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

criminal activity, and/or the user of the phone or co-conspirators, including any GPS data associated with the photo or video;

- Stored text messages that relate to the above-listed federal crimes or that may show the user of the phone and/or coconspirators, including Apple iMessages, Blackberry Messenger messages, WhatsApp messages, or other similar messaging services where the data is stored on the telephone;

- Stored data relevant to financial transactions, or physical/electronic trades of cash for goods/services (trade-based money laundering); and

- Stored tracking or navigation data.

k.  Latent prints and identifying material from items at the premises

Affidavit of SA Guy Gino - 39
USAO# 2020R00405

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800